# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**KENNETH P. CURRAN,**

      **Plaintiff,**

      v.                                                         Case No. 18-CV-88

**UNITED STATES POSTAL SERVICE,**

      **Defendant.**

## DECISION AND ORDER

### INTRODUCTION

Plaintiff Kenneth Curran brought this action against defendant United States Postal Service (USPS) under the Freedom of Information Act, alleging that USPS improperly withheld documents responsive to his request for records. (ECF No. 1.) USPS moves for summary judgment pursuant to Federal Rule of Civil Procedure 56. (ECF No. 20.) In connection with his response to USPS's motion, Curran filed an unopposed motion for *in camera* review of records. (ECF No. 25; *see* ECF No. 28 at 3.) The court will **grant** that motion. All parties have consented to the full jurisdiction of a magistrate judge. (ECF Nos. 4, 5.) USPS's motion for summary judgment is ready for resolution.

## BACKGROUND

Curran is employed as an electronic technician in the maintenance department of USPS's Processing and Distribution Center in Madison, Wisconsin. (ECF No. 1, ¶ 2; ECF No. 24 at 2.) Curran has repeatedly observed co-workers sleeping and using government computers for non-work-related internet use. (ECF No. 1, ¶ 7.)

On November 11, 2015, Curran submitted a formal complaint to the USPS Office of Inspector General, alleging waste and abuse by maintenance employees at the Madison Processing and Distribution Center. (ECF No. 1, ¶ 8; *see* ECF No. 1-1.) On December 24, 2015, Plant Manager Gary Kaiser met with Curran to discuss his complaint. (ECF No. 1, ¶ 12.) At the end of the meeting, Kasier assured Curran that the matter would be looked into. (*Id.*)

An audit team from the Office of Inspector General arrived at the Madison Processing and Distribution Center the week of March 21-25, 2016. (ECF No. 1, ¶ 14.) Curran provided the team with information regarding employees sleeping on the job, internet usage, government equipment taken out of the facility, and a hard drive being wiped clean. (*Id.*)

On September 27, 2016, the Office of Inspector General released a public audit report following an investigation of Curran's complaints. (*See* ECF No. 1-3.) The report concluded that the "Madison [Processing and Distribution Center] maintenance

management did not effectively manage overtime for the 13 electronic technicians" that were investigated as part of the report. (*Id.* at 2.)

> As a result, the Postal Service incurred unnecessary overtime and penalty overtime costs of $214,155 during [Fiscal Years] 2014 and 2015. Additionally, … management can potentially save at least $107,078 for [Fiscal Year] 2016, by reducing electronic technicians' overtime and penalty overtime by 58 percent to achieve the average overtime usage of electronic technicians at comparable facilities.

(*Id.* at 4.) The audit report specifically addressed internet usage:

> Five of the 13 electronic technicians (or 38 percent) had an average daily Internet use of between 24 and 66 minutes, which exceeded the 18-minute daily average Internet use of the 13 electronic technicians combined.
>
> Two of the five electronic technicians far exceeded the average, one with 66 daily average minutes (266 percent above) and one with 49 daily average minutes (172 percent above) and had excessive Internet usage instances ranging from about 170 to 250 minutes. These two electronic technicians also visited a significantly higher volume of non-work related sites, consisting of various news, sport, social media, and retail websites. Compared to the other 11 electronic technicians, one had above average overtime and penalty overtime usage both overall and during the weekends.
>
> The remaining three electronic technicians exceeded the daily average, ranging from 24 minutes (33 percent above) to 28 minutes (56 percent above) and had excessive Internet usage instances ranging from 105 to 162 minutes. They visited several non-work related sites on either a Saturday or Sunday, when supervisors were not present. All three technicians had above average overtime and penalty overtime use while one of those three technicians had above average overtime during the weekends.

(ECF No. 1-3 at 12-13.) "These incidents occurred because maintenance supervisors did not monitor employees' computer usage." (*Id.* at 13.)

The report recommended in part that Acting District Manager, Lakeland District, Deborah Woodrum instruct maintenance management to "[d]evelop and implement a process to monitor Maintenance personnel's personal use of Postal Service computers during workhours to ensure compliance with the established policy for Internet usage." (ECF No. 1-3 at 16.) With regard to that recommendation, Woodrum responded:

> Management agrees, in part, with this recommendation.
> Madison management is not able to install any type of monitoring software on the computer systems. However, we are developing an observation log that will be used by all management personnel in the [Madison Processing and Distribution Center] to observe and document what activities the [electronic technicians] are engaged in at random intervals during all tours and workdays. The Acting District Manager will send out messaging to the entire District re-iterating the policy for limited personal usage of postal equipment and internet usage.

(*Id.* at 24-25.)

Curran alleges that the misconduct continues unchecked. (ECF No. 1, ¶ 20.) He submitted a Freedom of Information Act (FOIA) request to USPS's Manager Records Office on April 2, 2017:

> I request the following records for Madison Processing & Distribution Center … from December 24, 2015 to present.
>
> 1) All records relating to non-postal websites accessed by maintenance employees, including electronics technicians and maintenance management. USPS Office of Inspector General (OIG) provided these records to Acting Lakeland District Manager Debbie Woodrum for rebuttal of Audit Report HR-AR-16-005. The records should include but not be limited to OIG's 2016 audit/investigation, daily logs of internet usage referenced on page 15 of the Audit Report HR-AR-16-005, and OIG complaint filed on December 11, 2016.

4

2) Request all records relating to USPS employees in the Maintenance Department being walked out of the building in April of 2016. Lakeland District most likely ordered this action as a result of OIG's onsite audit in March of 2016.

3) Request all records relating to USPS employees sleeping at Madison Processing & Distribution Center which should include photographs. Lakeland District PO Box 5000 Milwaukee, WI 53201-5000 is most likely in possession of the photos.

(ECF No. 1-4 at 1.)

In a letter dated April 12, 2017, Freedom of Information Coordinator LaVerne Morgan-Hill denied Curran's FOIA request:

Based on your description of records sought, falls [sic] under the FOIA exemption guideline for Federal Agencies to withhold information.

b(2) Personnel Rules and Practices—applies to records related solely to internal personnel rules and practices that are either (a) too trivial to be of genuine public interest or (b) would enable circumvention of laws or regulations.

B(6)—Personal Information—applies to personal information, including medical and personnel files, the disclosure of which would be a clearly unwarranted invasion of personal privacy.

(ECF No. 1-5 at 1.)

Curran filed an administrative appeal of the denial to the General Counsel of USPS. (ECF No. 1-6.) In a letter dated August 31, 2017, Attorney James Tucker affirmed Morgan-Hill's denial of Curran's FOIA request. (ECF No. 1-7.) Relying on Exemption 6, Tucker wrote:

You have failed to articulate a cognizable public interest in the requested information. As courts have noted, there is no cognizable public interest in

> this type of record. Therefore, the privacy interests involved heavily outweigh a non-existent public interest in disclosure. As such, the requested information was properly withheld because disclosure would constitute an unwarranted invasion of personal privacy.

(*Id.* at 3.) (Internal citations omitted.) Because Tucker found that Exemption 6 warranted withholding the requested records, he did not address Curran's argument that USPS incorrectly applied Exemption 2. (*Id.*)

Curran appeals Tucker's denial to this court. *See* 5 U.S.C. § 552(a)(4)(B).

## STANDARD OF REVIEW

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Veterans Affairs*, 828 F. Supp. 2d 325, 329 (D.D.C. 2011). "[T]he strong presumption in favor of disclosure places the burden on the agency to justify the withholding of any requested documents." *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991) (citing *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976); *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 755 (1989)). The agency must prove by "a preponderance of the evidence that a withheld document falls within one of the exemptions." *Enviro Tech. Int'l v. U.S. Env't Prot. Agency*, 371 F.3d 370, 374 (7th Cir. 2004) (citing 5 U.S.C. § 552(a)(4)(B)).

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" only if it "might affect the outcome of the suit" and a dispute is "genuine" only if a reasonable factfinder could return a verdict

for the non-movant. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). In resolving a motion for summary judgment, the court is to "construe all evidence and draw all reasonable inferences from the evidence in" favor of the non-movant. *E.Y. v. United States*, 758 F.3d 861, 863 (7th Cir. 2014) (citing *Gil v. Reed*, 535 F.3d 551, 556 (7th Cir. 2008); *Del Raso v. United States*, 244 F.3d 567, 570 (7th Cir. 2001)).

## ANALYSIS

"The Freedom of Information Act was enacted to facilitate public access to Government documents," *Ray*, 502 U.S. at 173 (citing *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 151 (1989)), and was designed "'to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny.'" *Rose*, 425 U.S. at 361. It "reflects 'a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language.'" *U.S. Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 494 (1994) (quoting *Rose*, 425 U.S. at 360-61 (internal quotation marks omitted)); *see* 5 U.S.C. §§ 552(a)(3), (b). "These exemptions are explicitly made exclusive and must be narrowly construed." *Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011) (internal quotation and citations omitted).

In denying Curran's FOIA request, USPS relied on Exemptions 2 and 6. (*See* ECF No. 1-5 at 1.) Exemption 2 shields from disclosure matters that are "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). The Supreme Court has held that "[a]n agency's 'personnel rules and practices' are its rules and

7

practices dealing with employee relations or human resources"—"such matters as hiring and firing, work rules and discipline, compensation and benefits." *Milner*, 562 U.S. at 570. Exemption 6, on the other hand, shields from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). It was enacted primarily "to protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information," and to "provide for the confidentiality of personal matters." *U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 599 (1982).

To determine whether an agency has properly withheld records under Exemption 6, the court must first determine whether the records in question are personnel, medical, or similar files. *Associated Press v. U.S. Dep't of Def.*, 554 F.3d 274, 291 (2d Cir. 2009). The Supreme Court has broadly interpreted "similar files" to mean "detailed Government records on an individual which can be identified as applying to that individual." *Washington Post*, 456 U.S. at 602.

If the records in question are determined to be personnel, medical, or similar files, the court must then "balance the public need for the information against the individual's privacy interest in order to assess whether disclosure would constitute a clearly unwarranted invasion of personal privacy." *Associated Press*, 554 F.3d at 291. "[T]he only relevant 'public interest in disclosure' to be weighed in this balance is the extent to which the disclosure would serve the 'core purpose of the FOIA,' which is 'contribut[ing]

8

significantly to public understanding *of the operations or activities of the government.*'" *Fed. Labor Relations Auth.*, 510 U.S. at 495 (quoting *Reporters Committee*, 489 U.S. at 775) (emphasis and second alteration in original). "Official information that sheds light on an agency's performance of its statutory duties falls squarely within that statutory purpose. That purpose, however, is not fostered by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct." *Reporters Committee*, 489 U.S. at 773.

Section 552(a)(4)(B) provides that a district court shall review an agency's denial of a FOIA request de novo. 5 U.S.C. § 552(a)(4)(B). To assist the court in its review, USPS has provided the court with (1) a *Vaughn* index that describes the documents withheld (ECF No. 21-1); (2) affidavits by Kaiser (ECF No. 29) and Woodrum (ECF No. 30); (3) a copy of the documents listed on the *Vaughn* index; and (4) internet usage records pertaining to one USPS maintenance department employee (*see* ECF No. 32) as a random sample of the records that exist for all maintenance department employees.

USPS argues that the requested records are exempt from disclosure under Exemption 6 because (1) they meet the definition of personnel or similar files, and (2) their disclosure would constitute a clearly unwarranted invasion of the employees' personal privacy. (*See* ECF No. 21.) Curran does not dispute that the requested records meet the definition of personnel or similar files. (*See* ECF No. 24.)

9

## I. Internet Usage Records

As an initial matter, the parties dispute the scope of Curran's first FOIA request, which seeks production of:

> All records relating to non-postal websites accessed by maintenance employees, including electronics technicians and maintenance management. USPS Office of Inspector General (OIG) provided these records to Acting Lakeland District Manager Debbie Woodrum for rebuttal of Audit Report HR-AR_16-005. The records should include but not be limited to OIG's 2016 audit/investigation, daily logs of internet usage referenced on page 15 of Audit Report HR-AR-16-005, and OIG complaint filed on December 11, 2016.

(ECF No. 1-4 at 1.) USPS says that it understood this request "to seek disclosure of all records the Office of Inspector General for USPS provided to Lakeland District Manager Debbie Woodrum for the purposes of permitting her to respond to the findings of the OIG audit report." (ECF No. 28 at 2.) Curran argues that USPS construed his request "more narrowly than is supported by the text of the request." (ECF No. 24 at 9.) He states that, "[i]n an effort to assist those who would be responding in their task of identifying the records, he noted in the request his understanding that the records had been provided to the Lakeland facility district manager for use in a response to the audit report." (*Id.* at 10.) He did not intend for that gesture to limit his request for "[a]ll records relating to non-postal websites accessed by maintenance employees." (*Id.*)

"Courts have ruled that an agency should *broadly* construe the subject matter of a FOIA request." *Dayton Newspaper, Inc. v. Dep't of Veterans Affairs*, 510 F. Supp. 2d 441, 447 (S.D. Ohio 2007) (citing *LaCedra v. Exec. Office for U.S. Att'ys*, 317 F.3d 345, 348 (D.C. Cir.

2003)) (emphasis added); *see also Protect Democracy Project v. U.S. Dep't of Energy*, 330 F. Supp. 3d 515, 522-23 (D.D.C. 2018) ("[A]n agency should not narrow a broadly worded FOIA request merely because the requester goes on to specify particular information he is seeking."). As such, although the court agrees that USPS's reading of the first FOIA request was reasonable, it will broadly construe Curran's first FOIA request as requesting "[a]ll records relating to non-postal websites accessed by maintenance employees, including electronic technicians and maintenance management," from December 24, 2015 to present, including but not limited to those records which the USPS Office of Inspector General (OIG) provided to Acting Lakeland District Manager Debbie Woodrum for rebuttal of Audit Report HR-AR_16-005. (*See* ECF No. 1-4 at 1.)

After learning (through Curran's response to USPS's motion for summary judgment) that Curran did not intend to limit his first request to the records which the Office of Inspector General provided to Woodrum, counsel for USPS "met with plaintiff's counsel to discuss the issue and to further clarify the scope of Mr. Curran's request." (ECF No. 28 at 3.) As a result of those discussions, USPS agreed to provide the court with "a sample of one internet usage record pertaining to a maintenance department employee selected at random from an alphabetical list of 24 employees." (*Id.*) The record (consisting of 858 pages) was provided "for the purpose of determining whether the documents fall within Exemption 6 and whether they can be redacted in a way that protects the privacy of the employees involved." (*Id.*)

11

USPS argues that the internet usage records (A) are not "agency records" subject to disclosure under FOIA, and (B) even if they are, the public disclosure of those records would constitute a clearly unwarranted invasion of the maintenance department employees' personal privacy. (ECF No. 28 at 4-11.)

**A. "Agency Records"**

"An agency presented with a request for records under FOIA is required to produce only agency records[.]" *Ethyl Corp. v. U.S. Env't Prot. Agency*, 25 F.2d 1241, 1247 (4th Cir. 1994). In its reply brief, USPS argues that the internet usage records are personal in nature and thus not subject to disclosure under FOIA:

> [I]n seeking the public disclosure of all "non-postal websites" accessed by Postal Service employees, Mr. Curran appears to focus his FOIA request entirely on internet searches that are personal in nature. But under *Ethyl Corporation*, these kinds of personal records do not meet the definition of an "agency record" subject to the FOIA. Had Mr. Curran sought the disclosure of work-related internet searches, those records would likely meet the threshold definition of an agency record. But here, the records sought are, by the terms of Mr. Curran's request, personal in nature; as such, they are not covered by the FOIA and are not subject to public disclosure.

(ECF No. 28 at 4-5.) (Internal footnote omitted.)[1]

However, the fact that the records may contain some personal information about USPS employees does not render the records any less agency records. Agency records

---

[1] Curran argues that USPS has waived this argument by failing to raise it until its reply brief. (ECF No. 34 at 2.) While that is typically true, *see Laborers' Pension Fund v. W.R. Weis Company, Inc.*, 879 F.3d 760, 768 (7th Cir. 2018), USPS's failure was due to its good faith misunderstanding of the scope of Curran's first FOIA request. (*See* ECF No. 28 at 2-5.) The court granted Curran a chance to respond in a sur-reply brief. (*See* ECF No. 34.)

"are those that are either created or obtained by the agency and are subject to the control of the agency at the time the FOIA request is made." *Ethyl Corp.*, 25 F.3d at 1247; *see U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 144-45 (1989). As USPS explains, the "internet usage records of Postal Service employees" are stored in a "central database" and must be "processed by a log analyzer application to place the records into a readable format." (ECF No. 28 at 3, n. 2.) As such, they are clearly created by USPS and were subject to its control at the time of Curran's FOIA request. Curran's request for the production of records related to non-work-related internet searches (as opposed to work-related searches) does not somehow render the records something other than "agency records."

Therefore, since the internet usage records are "agency records," and USPS must disclose them unless they fall within one of the FOIA exemptions.

### B. Exemption 6

USPS argues that the internet usage records are protected from disclosure under Exemption 6. (ECF No. 28 at 5.) The Exemption 6 balancing analysis requires the court to first determine "whether disclosure of the files 'would compromise a substantial, as opposed to *de minimis*, privacy interest,' because '[i]f no significant privacy interest is implicated … FOIA demands disclosure.'" *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1229 (D.C. Cir. 2008) (quoting *Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989)) (alterations in original). A USPS employee's internet usage record includes his or her name, user identification, and a chronological list of his or her

internet search inputs, including the dates and times the searches were conducted. (*See* ECF No. 28 at 3.) An employee's internet usage record may reveal intimate (and potentially embarrassing) details about his or her personal or work life. As such, the maintenance employees have a significant privacy interest with regard to the public disclosure of their internet search history. *See Wood v. Fed. Bureau of Investigation*, 432 F.3d 78, 88 (2d Cir. 2005) ("This interest against possible harassment and embarrassment … raises a measurable privacy concern that must be weighed against the public's interest in disclosure."); *Ripskis v. Dep't of Hous. And Urban Dev.*, 746 F.2d 1, 3 (D.C. Cir. 1984) ("[Exemption 6] is generally thought to protect intimate personal details the disclosure of which would be likely to cause embarrassment.").

Having said that, the employees' privacy interests are substantially diminished if all personal identifying information can be redacted from the records. Curran argues that "[b]ecause there are more than 40 maintenance department employees with internet access, it would not be possible to identify any employees' specific internet usage if names are redacted from the documents." (ECF No. 24 at 20.) In response, USPS argues:

> Although the volume of information disclosed might decrease the chance that Mr. Curran or another co-worker could link those searches to a specific employee, this is far from certain, and many categories of personal searches could well identify that employee to a co-worker.
>
> To take one example, assume an employee has a child who plays on a local high school football team. The employee might well conduct personal internet searches of the high school's website to ascertain the child's schedule or game location. To the extent a co-worker is familiar with the employee's family activities, the co-worker could rather easily link a list of

search results to that specific person. Multiple similar examples can be imagined.

(ECF No. 28 at 9-10.)

The court agrees with Curran. Having reviewed the records *in camera*, if all personal identifying information is redacted, it would be extremely difficult for a member of the public to link specific searches to a specific employee. The Supreme Court has noted that "Exemption 6 was directed at threats to privacy interests more palpable than *mere possibilities*." *Rose*, 425 U.S. at 380 n. 19 (emphasis added); *see Arieff v. U.S. Dep't of Navy*, 712 F.2d 1462, 1467 (D.C. Cir. 1983).

The court must next weigh the employees' privacy interest in non-disclosure against the public interest in the release of the records to determine whether, on balance, disclosure would amount to a clearly unwarranted invasion of personal privacy. *Multi Ag Media*, 515 F.3d at 1230-31. The public has a valid interest in confirming that management at the Madison Processing and Distribution Center is taking corrective action to ensure that maintenance employees are no longer abusing their internet privileges. *See Reporters Committee*, 489 U.S. at 773 (holding that the basic purpose of FOIA focuses on the citizens' right to be informed about what their government is up to).

The balancing of these interests favors disclosure of the records as long as all personal identifying information is redacted. *See Lurie v. Dep't of Army*, 970 F. Supp. 19, 37 (D.D.C. 1997) ("If the redaction reasonably protects the privacy interest, the record should be released."); 5 U.S.C. § 552(b) ("Any reasonably segregable portion of a record

shall be provided … after deletion of the portions which are exempt[.]"). While Curran has not moved for summary judgment, "district courts are widely acknowledged to possess the power to enter summary judgment *sua sponte*, so long as the losing party was on notice that [it] had to come forward with all of [its] evidence." *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986); *see* Fed. R. Civ. P. 56(f). USPS was on notice and in fact did come forward with all of its evidence. As such, the court will deny USPS summary judgment, grant summary judgment for Curran on this issue, and order USPS to produce the internet usage records for all maintenance department employees, with the employees' personal identifying information redacted.[2]

## II. Supervisor Observation Logs

USPS has withheld from disclosure supervisor observation logs that were developed in response to the Office of Inspector General's recommendation that Madison management "develop and implement a process to monitor Maintenance personnel's personal use of USPS computers during workhours to ensure compliance with the established policy for internet usage." (ECF No. 1-3 at 24; *see* ECF No. 21-1, Bates Range 111-237.) The purpose of the supervisor observation logs was "to observe and document what activities the [electronic technicians] [were] engaged in at random intervals during all tours and workdays." (ECF No. 1-3 at 24.)

---

[2] USPS shall produce the internet usage records for *all* maintenance department employees, including but not limited to electronic technicians and maintenance management.

USPS has failed to identify any significant privacy interests that would be implicated by the disclosure of the observation logs. The observation logs generally describe what is occurring in the maintenance hallway and "E.T. Lab/Computer Room" at random intervals throughout the workday, and do not reveal any personal or intimate information.

As such, the court will deny USPS summary judgment with regard to the supervisor observation logs (ECF No. 21-1, Bates Range 111-237), enter summary judgment for Curran on this issue, and order that the logs be produced. *See Nat'l Ass'n of Retired Fed. Employees*, 879 F.2d at 874 ("If no significant privacy interest is implicated … FOIA demands disclosure."). In producing the logs, USPS may redact all personal identifying information. *See U.S. Dep't of Navy v. Fed. Labor Relations Auth.*, 975 F.2d 348, 352 (7th Cir. 1992) (holding that federal employees have a privacy interest in the release of their names in association with their employment with the federal government).

### III. Investigation of Maintenance Manager

USPS has also withheld all records relating to the investigation and discipline of a maintenance manager at the Madison Processing and Distribution Center. (*See* ECF No. 21-1, Bates Range 001-110, 238-253.) The court agrees with USPS that the details behind why the maintenance manager was investigated and disciplined are personal, potentially embarrassing, and could lead to possible harassment. (*See* ECF No. 28 at 9.) As such, the maintenance manager has a significant privacy interest with regard to disclosure, which

17

cannot be adequately protected by redacting the maintenance manager's name from the records. *See Dayton Newspaper, Inc. v. Dep't of Veteran Affairs*, 257 F. Supp. 2d 988, 999 (S.D. Ohio 2003) ("One's privacy is invaded whenever the disclosure of information could lead to embarrassment [or] humiliation[.]"); *Alirez v. Nat'l Labor Relations Bd.*, 676 F.2d 423, 428 (10th Cir. 1982) (finding that deletion of names and other identifying data pertaining to a small group of co-workers was simply inadequate to protect them from embarrassment or reprisals because the FOIA requester could still possibly identify them).

With regard to the public interest in the disclosure of these records, Curran argues, and the court agrees, that the public has an interest in knowing whether the investigation of the maintenance manager was comprehensive and whether USPS imposed adequate disciplinary measures. (ECF No. 24 at 17; *See Lurie*, 970 F. Supp. 37 ("The public interest … extends to knowing whether an investigation was comprehensive and that the agency imposed adequate disciplinary measures.").) However, the public interest is limited. The maintenance manager was a relatively low-level government employee, *see Providence Journal Co. v. U.S. Dep't of Army*, 981 F.2d 552, 568-69 (1st Cir. 1992), and the investigation was unrelated to the Office of Inspector General audit, beginning months before Curran made his initial complaint (*see* ECF No. 29, ¶ 6). The release of these records in isolation would not provide much information about USPS's own conduct. *Cf. Beck v. Dep't of Justice*, 997 F.2d 1489, 1493 (D.C. Cir. 1993) ("The identity of one or two individual

relatively low-level government wrongdoers, released in isolation, does not provide information about the agency's own conduct.").

The balancing of these competing interests favors withholding these records from public disclosure. As such, the court will grant USPS summary judgment with regard to all records relating to the investigation and discipline of a maintenance manager at the Madison Processing and Distribution Center (ECF No. 21-1, Bates Range 001-110, 238-253).

**IT IS THEREFORE ORDERED** that Curran's motion for *in camera* review of records (ECF No. 25) is **granted**.

**IT IS FURTHER ORDERD** that USPS's motion for summary judgment (ECF No. 20) is **granted** in part and **denied** in part**.** USPS's motion is **granted** with regard to all records relating to the investigation and discipline of a maintenance manager at the Madison Processing and Distribution Center (ECF No. 21-1, Bates Range 001-110, 238-253), and **denied** with regard to internet usage records and supervisory observation logs (ECF No. 21-1, Bates Range, 111-237).

**IT IS FURTHER ORDERED** that summary judgment is granted for Curran as it relates to all maintenance department employees' internet usage records and the supervisor observation logs (ECF No. 21-1, Bates Range, 111-237), which documents are to be produced.

Dated at Milwaukee, Wisconsin this 6th day of February, 2019.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge